**In the Matter of Eileen M. LANG, Debtor.**

**Bankruptcy No. 80–B–10368.**

United States Bankruptcy Court, S. D. New York.

July 30, 1980.

Michael Berman, New York City, Successor Counsel to debtor.

Ullman, Miller & Wrubel, P. C., New York City, for the applicant.

Robert B. Schindler, New York City, Interim Trustee.

1. Cited also as 11 U.S.C. § 301 pursuant to Section 101 of the Code.

2. Chapter 7 of the 1978 statute, Sections 721 *et seq.*, 11 U.S.C. §§ 721 *et seq.*, is the liquidation chapter and is for that reason to be distinguished from the reorganization sections of Chapter 11, Sections 1101–1146, and from the provisions of Chapter 13, Sections 1301–1330, which deal with individual debtors with regular income who seek adjustment of their debts.

3. The 1978 statute, Pub.L. 95–598, 92 Stat. 2549, which took effect on October 1, 1979 pursuant to Section 402(a) of its Title IV sections, eliminated the word "bankrupt" which, under the now repealed 1898 Act, denoted a petition looking towards a liquidation of a

## OPINION

ROY BABITT, Bankruptcy Judge:

Eileen M. Lang filed her voluntary petition as a debtor under Section 301 of the 1978 Bankruptcy Code on March 18, 1980.[1] That filing for Chapter 7 relief[2] constituted an "order for relief."[3] That filing also operated as an automatic stay of creditors who, among other things described in Section 362(a), 11 U.S.C. § 362(a), sought to enforce against the debtor or her property judgments obtained before the petition was filed.

Eschewing procedures described in Section 362(d) to secure relief from the automatic stay, the Nordic American Banking Corporation (NABC), a creditor described in debtor's schedules as holding a judgment docketed in the Supreme Court of the State of New York on February 14, 1980 in an amount in excess of $750,000., moved to dismiss the petition and to have the order for relief vacated with prejudice. Support for the motion was said to be found in, among other sections cited in the notice of motion, Section 707, 11 U.S.C. § 707, which, in relevant part, reads as follows:

"The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—(1) unreasonable delay by the debtor that is prejudicial to creditors; . . ."

NABC alleged that the debtor unreasonably delayed filing her petition to movant's

bankrupt's assets and was therefore to be distinguished from the debtor rehabilitation concept of that Act's Chapters X, XI, XII and XIII. When voluntary liquidation was sought under the 1898 Act, the filing of the petition to achieve that result operated as an automatic adjudication of the petitioner as a bankrupt under Section 18f, 11 U.S.C. (1976 ed.) § 41f. The 1978 Code achieves no change from that law but substitutes the phrase "order for relief" for the word "adjudication" as a "less pejorative phrase" consistent with Congress' power to permit voluntary bankruptcy. See Sen. Rep. 95–989, 95th Cong., 2d Sess. 31 (1978); House Rep. 95–595, 95th Cong., 1st Sess. 321 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

prejudice, that the debtor dealt with her property in fraud of this creditor and that the petition was executed on the very eve of post-judgment discovery by this creditor.

The paths of NABC and the debtor crossed in late 1978 when the latter, as president of a company known as Risen Fabrics, Inc., gave her personal guarantee to the former on a loan made to Risen Fabrics. The extension of credit to Risen Fabrics and the acceptance of debtor's personal guarantee were, it is alleged by NABC, induced by debtor's false financial statement of her asset picture. By the summer of 1979, Risen Fabrics was in default. Suit by NABC followed on the guarantee and, as seen, judgment was entered, proceedings supplementary to judgment were started, and debtor's petition was then filed.

The "assets" set forth in debtor's financial statement are not listed in the debtor's verified petition and accompanying schedules. NABC seizes on the state of the schedule of assets to support its conclusion that this property was transferred in fraud of creditors and, it is assumed, the petition was so timed that that property might not be recovered.

The debtor insists that her papers filed here are accurate, that her financial statement should not have been relied on by NABC and that she never acted in fraud of creditors insofar as disposition of her property is concerned.

The 1898 Act did not and the 1978 Code does not place a time limit within which a debtor may seek the benefits, and the burdens, of a voluntary bankruptcy petition. Experience has shown that submission to the omnivorous jurisdiction of the bankruptcy court is a step not taken lightly, and, more often than not, is the result of pressure by insistent creditors. Among other things, the price paid by the debtor is a surrender to a trustee of all property, save for exempt property within the overall scheme of Section 522, 11 U.S.C. § 522, to the end that the property will be available to all creditors equally within the distributive scheme of the statute, and not to that creditor first reaching the courthouse steps. Indeed, this is the impulse behind the automatic stay provisions of Section 362(a), i. e., to afford "fundamental debtor protections" by giving "the debtor a breathing spell from his creditors" and permitting him "to be relieved of the financial pressures that drove him into bankruptcy". Sen. Report 95–989, *supra*, at 54–55, U.S.Code Cong. & Admin.News 1978, p. 5841; House Report 95–595, *supra*, at 340–341, U.S.Code Cong. & Admin.News 1978, p. 6297. All this is in keeping with Congress' purpose to give the honest, financially pressed debtor a fresh start free of past errors and miscalculations. See *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964).

The court can understand the frustration of the large creditor who has proceeded to obtain a judgment and is met with the reach of the automatic stay of Section 362(a). But this is as it should be for Congress' policy under both the 1898 Act and the 1978 Code is designed to provide protection from creditors racing diligently to dismember the debtor's property to the exclusion of those less diligent. Sen. Report 95–989, *supra*, at 49; House Report 95–595, *supra*, at 340.

It is against these policy settings that Section 707(1) must be examined. That section knew no counterpart in the 1898 Act although it may be assumed that a bankruptcy court could act under some power given by Section 2a, 11 U.S.C. (1976 ed.) § 11a.

■ Although, at first blush, Section 707(1) might seem to afford a basis for a creditor to take the action NABC does here, the section must be interpreted not only by a consideration of the words "but by considering, as well, the context, the purposes of the law, and the circumstance under which the words were employed". *Maine v. Thiboutot*, — U.S. —, 100 S.Ct. 2502, at 2509, 65 L.Ed.2d 555 (1980), citing *District of Columbia v. Carter*, 409 U.S. 418, 420, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

Recognizing this principle, a reading of Section 707(1) yields, at second blush, an entirely different understanding than that which NABC urges as a basis to dismiss this debtor's petition.

■ Although the legislative history is sparse, see Sen. Report 95–989, *supra,* at 94, and House Report 95–595, *supra,* at 380, this court is satisfied that Section 707(1) speaks to delays by the debtor *after* the petition has been filed, as does Section 707(2). Section 707(2) clearly does so; section 707(1) less clearly; but when it is read with other sections of the Code, this court is satisfied that its interpretation is correct.

Section 521, 11 U.S.C. § 521, imposes mandatory duties on a debtor all of which are designed to speed the administration of the estate.

Section 343, 11 U.S.C. § 343, requires the debtor to "appear and submit to examination under oath . . . ." so that creditors and the trustee may determine "if assets have improperly been disposed of or concealed . . . ." See Sen. Report 95–989, *supra,* at 43; House Report 95–595, *supra,* at 332, U.S.Code Cong. & Admin.News 1978, p. 6288.

It is in these areas that a recalcitrant debtor may choose so to hamper the trustee's administration that the delay prejudices the creditors for whom the trustee labors. Accordingly, dismissal and loss of the discharge contemplated to give the debtor a fresh start would be called for by Section 707(1). From the debtor's own standpoint, failure to pay required fees is cause for dismissal under Section 707(2). While the reach of Section 707(2) might admit of a dismissal without prejudice, dismissal under Section 707(1) could be with prejudice. The point is that the section speaks to post-petition delay and not to the point in time when a debtor chooses the grave step of filing a petition.[4]

The main argument by NABC seems to be this: In her business dealings with NABC, the debtor described substantial assets in order to secure credit for her company. As her bankruptcy papers disclose no such property, it follows that the debtor was fraudulent in her dealings with NABC and other creditors. Although neither proposition is supported by any evidence, advanced as they are in pure surmise and conjecture, NABC argues that the debtor delayed her petition for more than one year after the alleged fraudulent dealing (despite the fact that no date for the alleged fraudulent dealing or even the nature of the fraudulent activity is described). It concludes, therefore, that the petition should be dismissed with prejudice under Section 349(a), 11 U.S.C. § 349(a), which does empower the court, on dismissal, to order that a subsequent petition not discharge the debts set forth in the dismissed petition.

■ It is true that Section 548(a)(1), 11 U.S.C. § 548(a)(1), gives a trustee in bankruptcy the power to avoid a transfer by the debtor of property within one year before the date of the filing of the petition where the transfer under Section 548(d)(1) was made with actual intent to defraud creditors.

But if anything was settled under Section 67d of the 1898 Act, 11 U.S.C. (1976 ed.) § 107d, it is that this power of avoidance belongs to the trustee. 4 *Collier on Bankruptcy* (14th ed.) ¶ 67.29. This weapon is in the trustee's arsenal and was given by Congress as a bankruptcy action to that officer. It did not belong to creditors and, absent bankruptcy, no creditor could invoke its

---

4. Section 305 of the Code also speaks to dismissal in appropriate circumstances confided to the court's judgment. This exercise is based on the interests of all creditors and the debtor, and contemplates the instance where a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time-consuming to start afresh with the federal bankruptcy process. See Sen. Report 95–989, *supra* at 35–36; House Report 95–595, *supra,* at 325.

Were NABC the only creditor acknowledged by the debtor, which it is not, a case might be made for a Section 305 dismissal so that the creditor could proceed against the debtor's property less her state exemptions. In any event, Section 707(1) will not lie to achieve this result.

provisions to proceed against the transferee of the property fraudulently transferred.

Section 548(a) of the 1978 Code is derived from Section 67d of the 1898 Act and "permits the trustee to avoid transfers by the debtor in fraud of his creditors". Sen. Rep. 95–989, *supra*, at 89, U.S.Code Cong. & Admin.News 1978, p. 5875. House Report 95–595, *supra*, at 375.[5]

So, when all is said and done, NABC could not look to Section 548 whether a year had passed from the time of the transfer or not. If anything, leaving the petition in place gives this creditor a knight-errant to tilt for it in the bankruptcy lists.

It is also true, however, that absent bankruptcy, NABC might have an action against the transferee of the debtor's property where the transfer is fraudulent under applicable state law. But the filing of a petition under the 1898 Act did not take that away and the 1978 Code does not.

Section 70e of the former, 11 U.S.C. (1976 ed.) § 110e, gave the trustee in bankruptcy the power to void any transfer by the bankrupt which under state law was fraudulent and could be avoided by any creditor. 4B *Collier on Bankruptcy* (14th ed.) ¶ 70.71. And here, the applicable state period of limitation would apply rather than the Congressionally-mandated one year period for the trustee to reach back and avoid fraudulent transfers under Section 67d.

In the 1978 Code, Section 544(b), 11 U.S.C. § 544(b), chains the trustee to the rights a creditor would have to void fraudulent transfers under applicable local law, absent bankruptcy. This section, unlike Section 548, gives the trustee no independent power to challenge an allegedly invalid transfer. 4 *Collier on Bankruptcy* (15th ed.) ¶ 544.03[1]. He is dependent on such right in an unsecured creditor, in this case NABC.

But even if NABC's allegations consisted of more than an inference (that there was a fraudulent transfer), on an inference (that

the debtor's financial statement to secure credit for her company was true in the first place), and even if Section 707 were construed other than as construed here, the court would not order dismissal of the petition.

To order dismissal and thereby release the debtor from this court's jurisdiction would result in this creditor pursuing its own ends for its own benefit to the exclusion of the debtor's other creditors. If, on the other hand, the court's jurisdiction were to continue and the trustee had an action belonging to this or any other creditor under Section 544(b), at least all the creditors would benefit equally, an historic touchstone of bankruptcy.

 While NABC, far and away the debtor's largest creditor, is understandably frustrated by the attachment of this court's jurisdiction, this creditor is not without powerful remedies of its own.

From the allegations it makes in support of its motion, NABC could seek to bar the debtor's discharge under some of the subsections Congress wrote in Section 727(a), 11 U.S.C. § 727(a), as bases to bar discharge. And, given NABC's information, the trustee may bear that laboring oar under Section 727(c). Should such denial eventuate, NABC could race to the local courthouse at the appropriate time without the participation of the debtor's other creditors.

NABC could choose a more parochial means of relieving its frustration. Section 523(a)(2), 11 U.S.C. § 523(a)(2), seems relevant to the cause of that frustration. Here, if NABC prevails, its debt survives the debtor's discharge and it may then do whatever is appropriate to realize on it.

The motion to dismiss is denied. It is so ordered.

---

**5.** Section 546, 11 U.S.C. § 546, of the Code clinches the historic scope of the fraudulent conveyance sections of the 1898 Act and the 1978 Code by limiting the time within which a trustee might sue. See Sen. Report 95–989, *supra*, at 86; House Report 95–595, *supra*, at 371.