**In re Ricky Daniel HESS, Debtor.**

**JOHNSTON MEMORIAL HOSPITAL, Plaintiff,**

**v.**

**Ricky Daniel HESS and Carmie Peck and Crystal Denise Hess, an infant and J. Thomas Hulvey, M.D. and Peoples Bank, Inc. and Robert E. Wick, Jr., ESQ., Trustee, Defendants.**

**J. Thomas HULVEY, M.D., Plaintiff,**

**v.**

**Ricky Daniel HESS, Defendant.**

**Bankruptcy No. 7–81–01297.**
**Adv. Nos. 7–82–0028, 7–82–0035.**

United States Bankruptcy Court,
W. D. Virginia,
Abingdon Division.

April 15, 1982.

Henry A. Whitehurst, Christiansburg, Va., for debtor/defendant.

James P. Jones, Bristol, Va., for plaintiff, Johnston Memorial Hosp.

Randall B. Campbell, Lebanon, Va., for defendant, Carmie Peck.

Matthew J. Cody, Jr., Lebanon, Va., for defendant, Crystal Hess.

John M. Lamie, Abingdon, Va., for plaintiff, Dr. Hulvey.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

The issues before the Court are whether to discharge debts to Johnston Memorial Hospital (Hospital) and Dr. J. Thomas Hulvey (Doctor), and whether to void a transfer made by the debtor prior to the filing of his petition.

The debtor, Ricky Daniel Hess, suffered personal injuries in an automobile accident on February 11, 1979. Following the accident, he was treated at the Hospital and by an associate of Dr. Hulvey. The debtor did not pay for the medical services. On January 10, 1980, the Hospital obtained a judgment against the debtor in the amount of $23,276.12, and on March 11, 1980, the Doctor obtained a judgment against the debtor in the amount of $3,958.00. On January 26, 1981, the debtor received a $25,000.00 insurance settlement for injuries received in the accident. The debtor's attorney deducted the contingent attorney's fee for negotiating the settlement, as well as $500.00 for the Hospital and $100.00 for the Doctor.[1] The balance, $16,000.00, went to the debtor. The debtor's attorney told the debtor that the Hospital and the Doctor had been "taken care of" by payment of the statutory lien amount. The debtor understood that, "by law", he had no further obligation to the Hospital or the Doctor.

On advice of counsel, the debtor immediately invested the greater part of the proceeds. He purchased a $10,000.00 certificate of deposit and he opened a passbook savings account with $4,000.00. Both the certificate and the account were in the name of "Christal Denise Hess [sic] or Carmie Peck". Crystal Denise Hess is the debtor's infant daughter and Ms. Peck is his sister.

On April 8, 1981, a writ of *fieri facias* was issued by the Clerk of the Circuit Court of Washington County in execution of the Hospital's judgment. On July 8, 1981, the Hospital filed suit against the debtor, his daughter, and his sister in the Circuit Court of Russell County seeking to set aside the debtor's transfer of his insurance proceeds as a fraudulent and voluntary conveyance. A similar suit filed by the Doctor in the Russell County Court was consolidated with the Hospital's suit. During the pendency of these actions, on October 22, 1981, the debt-

---

1. The statutory lien amount in Virginia is $500.00 for hospitals and $100.00 for doctors, respectively. *See* Va.Code § 8.01–66.2. The Virginia Legislature was mindful of the debt- or's exemption when it prescribed and fixed in favor of hospitals and doctors the lien rights against personal injury proceeds set forth in the Statute.

or filed his petition in this Court for relief under Chapter 7 of the Bankruptcy Reform Act of 1978 (the Code). The debtor's Chapter 7 petition stayed any further action in state court. *See* 11 U.S.C. § 362(a).

The Hospital filed a complaint in this Court containing three prayers for relief. The Hospital asked for relief from the automatic stay to proceed with the state court proceeding against the debtor. In the alternative, the Hospital asked to have the transfer of funds by the debtor set aside as a fraudulent conveyance pursuant to § 548 of the Code. The Hospital also asked the Court to deny the debtor his Chapter 7 discharge pursuant to § 727 of the Code (Adversary Proceeding No. 7–82–0028). The Doctor filed a complaint in this Court asking that the debtor be denied a discharge, that the Doctor's debt be declared nondischargeable pursuant to § 523 of the Code, or in the alternative, that he be granted relief from the automatic stay to proceed in state court. (Adversary Proceeding No. 7–82–0035). The two adversary proceedings were consolidated for hearing in this Court.

■ Under § 548 of the Code, the trustee may set aside any transfer of an interest of the debtor in property if the debtor made such transfer with actual intent to hinder, delay, or defraud any creditor of the debtor. 11 U.S.C. § 548(a)(1). Furthermore, if the debtor received less than a reasonable equivalent value as consideration for the transfer and was insolvent on the date of the transfer or was rendered insolvent by the transfer, then the trustee may avoid the transfer. *Id.* § 548(a)(2)(A)–(B)(i). This voiding power is a power of the trustee alone, and cannot be exercised by a creditor. *In re Lang,* 5 B.R. 371, 374–75, 2 C.B.C.2d 829, 6 B.C.D. 713 (Bkrtcy.S.D.N.Y.1980). The Court will not, therefore, set aside this transfer at the behest of the Hospital.

■ Although a creditor cannot exercise the trustee's voiding power, the creditor is not without remedies. Each creditor in this case prayed that the Court deny the debtor's discharge pursuant to § 727 of the Code. Under § 727(a)(2)(A), the Court may deny the debtor a discharge if, within one year before the date of the filing of the petition, the debtor has transferred, or has permitted a transfer of, property with intent to hinder, delay, or defraud a creditor 11 U.S.C. § 727(a)(2)(A). The burden is on the objecting party to show actual intent to defraud. *See Semmerling Fence & Supply, Inc. v. Ramos,* 8 B.R. 490, 496–97, 7 B.C.D. 458, Bankr.L.Rep. ¶ 67,879 (CCH) (Bkrtcy., W.D.Wis.1980). The intent must be an actual fraudulent intent rather than constructive intent. The debtor must possess a culpable purpose. *Pittsburgh Nat'l Bank v. Dee,* 6 B.R. 784, 787–88, 6 B.C.D. 1169 (Bkrtcy.W.D.Pa.1981). *See* 4 Collier on Bankruptcy ¶ 727.02[3] at 727–8 (15th ed. 1981). Although the fact that valuable property has been gratuitously transferred raises a presumption of actual fraudulent intent, the question of intent is ultimately a question of fact. *Id.* at 727–10.

■ Counsel for the Hospital filed Rule 736 requests for admissions in this proceeding. *See* Fed.R.Bankr.P. 736 (incorporating Fed.R.Civ.P. 36). Those requests for admissions, filed less than two weeks prior to trial, asked the defendants in this proceeding to admit the authenticity of a deposition of the debtor, and of interrogatories propounded by the Hospital in the state court action and the debtor's answers to those interrogatories. The Hospital did not request admission of the substance of the state court discovery, only its accuracy and authenticity. Under Rule 36, the responding party has 30 days from the date served to respond to requests for admissions. The Hospital did not request that the time for response be shortened. As the requests were not mature for response, the debtor's failure to respond cannot be taken as an admission.[2]

---

**2.** The Hospital served its requests for admission on all parties defendant, and only defendant Peck responded before trial. It should be noted that one of the defendants in the Hospital's adversary proceeding is the debtor's infant daughter. The matters the Hospital sought to have admitted vitally affected the rights of that infant. For that reason, even if the matters

■ A party making a pre-trial admission may nonetheless amend or withdraw that admission, or challenge the admissibility of that admission into evidence at trial. *See* 4A *Moore's Federal Practice* ¶ 36.08 at 36–72 (2d ed. 1982). In this proceeding, the Hospital did not properly introduce the state court interrogatories into evidence, either as matter admitted (which it was not), or as new evidence. Matters ascertained in preparation for the state court trial are not before this Court.

■ The evidence before this Court shows a gratuitous transfer by the debtor within one year before the filing of his petition. That evidence would support an inference of a fraudulent transfer. Rebuttal evidence put on by the defendants, consisting of testimony by the debtor and his sister, and a statement by the infant daughter's guardian *ad litem*, is sufficient to overcome the inference. The Court heard and saw the demeanor of the witnesses. On fair evaluation of the weight and sufficiency of the evidence, the Court finds that the transfer of money by the debtor to accounts established for the benefit of his daughter was not done with the intent to hinder, delay, or defraud his creditors.

The debtor was frank and open in his testimony. At the time of the transfer, the debtor and his wife were having marital difficulties, and the debtor wanted to assure that the settlement proceeds were preserved for the use and benefit of his daughter. On advice of counsel, the debtor turned over $14,000.00 of his insurance settlement funds to the control of his sister. The evidence showed that the debtor's only motive in doing so was to remove the funds from his own control and from the reach of his wife. There being no intent to defraud creditors, the Court will not deny the debtor his discharge.

The Doctor prayed in the alternative that the Court find the debt owed him by the debtor nondischargeable pursuant to § 523 of the Code. Under § 523(a)(2), the Court

may declare a debt nondischargeable if that debt was incurred by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). The standard of proof of fraud under § 523 is clear, cogent, and convincing evidence, and the burden of that proof is on the party seeking to avoid discharge of the debt. In this case, the burden has not been met; there is no fraud.

For the foregoing reasons, the prayers of the Hospital and the Doctor cannot be granted. Counsel for Plaintiffs announced before the trial commenced that all matters were being submitted to this Court, thus foregoing the need for the request for leave to proceed in state court. This Court heard evidence on the merits of each claim, thereby precluding any further trial in state court. The plaintiffs' prayers for relief from the stay to pursue the matter in state court are, therefore, moot. The Hospital does not have the power, as a creditor, to exercise the trustee's voiding power under § 548 of the Code. That prayer for relief is, therefore, denied. The evidence offered to support denial of the debtor's discharge was outweighed by the debtor's evidence of honest intent in his actions, and the Court will not, therefore, enter a blanket denial of discharge. The Doctor's prayer to have his debt declared nondischargeable by reason of fraud by the debtor is likewise not supported by the evidence.

The Court has herein noted that the voiding power of 11 U.S.C. § 548 vests exclusively in the trustee for the benefit of all creditors.

Any action by the trustee to recover the funds in question, if successful, would be subject to the debtors right to claim exemptions therein. The debtors' exemptions take on the posture of exempt property by virtue of the nature of the property as proceeds of personal injury recovery and/or Homestead exemptions. *See Virginia Code* Section 34 and *In re Musgrove*, 7 B.R. 892, 3 C.B.C.2d 556 (Bkrtcy.W.D.Va.1981). The debtor's right to exemptions are further

had been admitted by the debtor, the Court would be chary of admitting any evidence that might infringe on the rights of the infant, without full knowledge and consent of the infant's guardian *ad litem*.

prescribed in 11 U.S.C. § 101(26)(A)(ii) which excludes exempt property in determining the issue of "insolvency" required under 11 U.S.C. § 548(a)(2)(B)(i). By vesting this right in the trustee, Congress obviously intended to prescribe these powers as being subject to the debtor's exemptions.

An Order will accordingly be entered.