In re George A. **CLEMENTS**, Debtor.

**CULLINAN ASSOCIATES, INC., Plaintiff,**

v.

**George A. CLEMENTS, Defendant.**

**Bankruptcy No. 7–92–02216–HPR–7. Adv. No. 7–92–00257.**

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

Sept. 24, 1996.

Howard J. Beck, Jr., Gentry, Locke, Rakes & Moore, Roanoke, VA, for Plaintiff.

Leon P. Ferrance, Key & Tatel, Roanoke, VA, for Debtor/Defendant.

FINDINGS OF FACTS AND CONCLUSIONS OF LAW IN THE NATURE OF MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

This matter is before the Court pursuant to remand from U.S. District Court entered February 17, 1995. This Court's prior decision made findings and conclusions in the nature of a Memorandum Opinion dated August 17, 1994 (Appendix 1). Pursuant to remand, this Court scheduled a further hearing to receive additional evidence upon the issues.

Upon rehearing, Plaintiff, Cullinan Associates ("Cullinan") offered no additional evidence. The Debtor, George A. Clements ("Debtor") presented evidence, without objections, by way of testimony of the Trustee, George McLean, and the Debtor.

The Court, having carefully considered the record and evidence submitted pursuant to remand, affirms its prior decision.

█ The district court remanded the case for the Court's consideration regarding the issue of "badges of fraud." Specifically, the district court noted three factual matters: (1) the transfers in question were made on the eve of bankruptcy; (2) they were made between two corporations controlled by Clements and;[1] (3) they were made following a substantial judgment in a lawsuit. (*Cullinan Assoc., Inc. v. George A. Clements*, Civ. Action No. 94–0819–R (W.D.Va. Feb. 1995) [hereinafter "D.Ct.Op."].)

At the initial hearing of this matter on June 1, 1994, the evidence presented, and a part of this Court's findings, was that the transfers were made with full consideration and, in some instances, more than fair consideration. The district court agreed that the consideration paid is probative evidence and that the "circumstances surrounding the questioned transaction are appropriately considered." (D.Ct.Op. at 3–4). These transfers were made with open disclosure and with no evidence that these transfers were for the purpose of fraudulent activity. Upon rehearing, Plaintiff's counsel stated that Cullinan did not "propose to offer any further evidence on that point other than what was in the record by way of testimony and exhibits from the June 1, 1994 hearing." Cullinan did not present any additional evidence of fraudulent intent concerning the transfers.

Although Calla Lily purchased George's, Inc., prior to George's filing a Chapter 7 petition, and although the Debtor owned both corporations, the evidence before the Court, by the Debtor's testimony presented in the first·hearing, clearly showed that Calla Lily paid full consideration for the inventory. The transfers were made openly and fully disclosed. Plaintiff presented no new or additional evidence to show that Debtor had actual intent to hinder, delay, or defraud

creditors. *In Re Hess*, 21 B.R. 465 (Bankr. W.D.Va.1982); *see also* 4 Collier on Bankruptcy, p. 727.02[3] (15th Ed.1994).

Secondly, the remand included directions that this Court determine whether the Debtor had an intent to delay or hinder the creditors in addition to whether there was actual intent to defraud the creditors. As this Court previously held, the intent must be actual intent as distinguished from constructive intent. *In Re Hess, supra.* Upon rehearing, Plaintiff's counsel asked the Debtor if he filed bankruptcy for "protection from the payment of the Cullinan judgment ..." and the Debtor answered that he filed as "protection from all the debt that [he] owed at the time."[2] (Tr. at 65, 7/28/95). The Debtor was further asked if he incorporated Calla Lily and placed George's, Inc., into bankruptcy in order to insulate himself from the Cullinan judgment. The Debtor replied that he also had leases and credit card debt. (Tr. at 70, 7/28/95). Debtor testified at the rehearing that he filed bankruptcy personally because of his inability to pay his personal and corporate debt. His corporate income was insufficient to pay the ongoing debts and he had no reasonable expectation of obtaining the ability to pay them. The Trustee testified that he had examined all records and facts and that there were no corporate assets available to creditors in light of the bank's blanket lien. Therefore, the estate had not been reduced so as to hinder or delay any collection attempts by the Plaintiff and the mere filing of a bankruptcy petition is insufficient to show actual intent to hinder or delay.

· Thirdly, the district court remanded for this Court's consideration of whether a reckless indifference to the truth existed and whether the Court's reliance on the "lag time" argument is misplaced. The district court suggested that the Court should consider the fact that Debtor signed the statements one day before filing and while the Debtor may have been confused, overall, the

---

1. The two corporations are Calla Lily, Inc., and George's, Inc., the latter having filed Chapter 7 on October 28, 1992.

2. The Cullinan judgment was originally in the amount of $10,465.75 plus interest of $3,553.18.

This portion of the judgment was satisfied to the extent of $10,000.00. Therefore, the main portion still owed is the attorney fees, which is the thrust of this Adversary Proceeding.

court should consider whether the relevant statements of the Debtor occurred during a "confusing" period of interrogation.

The Plaintiff must show that any false oath was knowingly and fraudulently made and the statements must contain a matter which the Debtor knew to be false and was falsified wilfully with an intent to defraud. *In re Woodlands Investment Assoc.*, 95 B.R. 681 (Bankr.W.D.Mo.1988); *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249 (4th Cir.1987); *See also* 4 Collier on Bankruptcy, p. 727.04[1] (15th Ed.1995). As this Court stated in its previous opinion, the Debtor originally testified that his schedules were prepared well in advance of the filing date and some changes might have occurred in the "lapse" time. After filling out the petition, he left it to his attorney to file it promptly. Upon rehearing, the Debtor reiterated that he first reviewed the petition on October 5 and that he was fully aware of signing under perjury sanctions; that he discussed the valuation of the inventory with his attorney in that the values were likely to be overstated; and that there were some obsolete items that needed to be taken out of the petition. (Tr. at 52). He testified that his attorney wanted to use the fair market values and that he had used the bookkeeper's value "because he pulled those from the CPA." (Tr. at 52). He testified that he signed another document on October 27 and that he reviewed the one page that he signed. He testified that the lapse time was not only to wait on a possible settlement with Plaintiff but "because it was after our fiscal year and we had received the information." (pg. 53). This Court heard the evidence and observed the candor, demeanor, and truthfulness of the Debtor and finds that the truthfulness of his testimony was clear and convincing.

The Debtor testified that he had indicated on his B–2 Schedule that George's, Inc., had no cash on hand and that it did not have an account. He testified that he was not trying to hide the existence of a checking account and that the amount of cash actually present was less than $200.00 and the checking account was used·for "money in, money out." He explained the omission of these items stating that he considered them as having essentially no value. *See In Re Bailey*, 147 B.R. 157 (Bankr.N.D.Ill.1992) (held that the omission of three insignificant accounts did not lead to fraudulent intent, even though an omission of a significant account was fraudulent.). Debtor cooperated with and produced everything requested of the Trustee and did not attempt to hide any information. (Tr. at 55, 7/28/95).

At the section 341 meeting, Debtor was asked if everything in his petition was correct and he answered in the affirmative. As this Court found previously, the Debtor was very confused at his section 341 meeting; that at times, two or three questions were being asked at once; and that new questions were asked before he had an opportunity to answer prior questions. The initial confusion surrounded the judgment for attorney's fees for Gentry, Locke, Rakes & Moore ("Gentry, Locke"), counsel for Cullinan.

Upon rehearing, Debtor presented testimony of George McLean, the Trustee conducting the section 341 meeting at issue. The Trustee testified that, originally, Gentry, Locke, made an appearance at the section 341 meeting on behalf of Cullinan. However, the transcript states that counsel represented "Almon"; however, the Trustee stated that a complaint had not been filed by Almon. (Tr. at 29, 7/28/95). The Trustee was aware of only one creditor, which was Gentry, Locke. Counsel then clarified that they represented Cullinan [again the transcript states "Almon"] and that there was an order awarding attorneys' fees to Gentry, Locke for their representation in the action. The Trustee then· understood that the actual creditor was Cullinan and that Cullinan had paid Gentry, Locke the fee that they had been awarded. The Debtor further testified that Gentry, Locke indicated that they were confused as to whom they actually represented as a creditor. (Tr. at 48, 7/28/95). In light of the Debtor's previous testimony, upon which this Court made findings, and the testimony at the July, 28, 1995 hearing, this Court finds and reaffirms its prior findings that the section 341 meeting was confusing to the Debtor and that the evidence fails to show that he was attempting to evade or make fraudulent misrepresentations.

■ Finally, the district court stated that the bankruptcy court relied on some factors that it should not have. (p. 4) Specifically, the court stated that the bankruptcy court

may not rely on the Trustee's decision to not object to the discharge nor can it rely on Cullinan's decision to not pursue actions under section 523 claims. (p. 5); Although this Court holds the duties and powers of a trustee in these cases in high regard as having a fiduciary duty to properly administer the estate, and this Trustee and others do so, the record is sufficient to support the ruling of this Court without the corroborating evidence of the Trustee's decisions in this case.[3]

Cullinan elected not to produce any additional evidence to the Court on the issues on remand. The only evidence presented to this Court supported and corroborated this Court's prior findings, conclusions, and opinion.

Accordingly, for the foregoing reasons, this Court reaffirms its August 17, 1994 decision and that the prayer of the complaint be denied. It is, accordingly,

## ORDERED

that the Plaintiff has failed to carry the burden of denying Debtor's discharge under Bankruptcy Code § 727. This Complaint is dismissed and closed.

**3.** A Chapter 7 Trustee, under 11 U.S.C. § 323, has a fiduciary duty to administer the estate expeditiously in the best interests of the estate, *See In re Riverside–Linden Inv. Co.,* 925 F.2d 320 (9th Cir.1991). The Trustee is required to "reach an informed judgment, after diligent investigation, as to whether it would be prudent to eliminate the inherent risks, delays and expense of prolonged litigation in an uncertain cause." *In Re Thompson,* 965 F.2d 1136 (1st Cir.1992).

*See also In Re Boston Metropolitan Buildings,* 92 F.Supp. 843 (D.Mass.1950), wherein the Court relied on the Trustee's conclusion along with a report from the SEC in determining whether there was overreaching and misconduct of the Creditor. The Court also placed great emphasis on the Trustee's opinion "because the Trustee has frequently demonstrated in this Court and at the bar sound judgment ... he, like the Court, has no motive except to do justice." *Id.* at 845.

This Court at the request of Gentry, Locke, directed the Trustee, Mr. McLean, to make further investigations into the George's, Inc. case. In following the Court's directions, the Trustee testified at the July 28, 1995 hearing as follows:

Q: In conducting your investigation, what cooperation did you receive from the debtor?
A: Extensive.
Q: Were there any attempts to hide any assets by the debtor?

Service of a copy of this Memorandum Opinion and Order shall be made by mail to the Debtor; counsel for Debtor/Defendant; counsel for Plaintiff; Trustee; and U.S. Trustee.

## APPENDIX 1

In the United States Bankruptcy Court for the Western District of Virginia
Roanoke Division

In re George A. Clements 430 Church Avenue, S.W. Roanoke, VA 24016
Debtor.

Cullinan Associates, Inc., Plaintiff,

v.

George A. Clements, Defendant.

### CHAPTER 7

CASE NO. 7–92–02216–HPR–7

### ADVERSARY PROCEEDING NO. 7–92–00257

A: Not that I am aware of.
Q: Were all the records, financial records, checks and everything else, were they produced for you?
A: Yes. Everything I requested.
Q: Did you discuss with the debtor an inventory turnover to you?
A: Yes. The remaining inventory, ...
Q: But did the debtor make any protestations about turning over that to you?
A: No.

The Trustee determined this to be a no asset case and further stated that he had no interest in selling the inventory and at one point contacted Gentry, Locke and told them that they could pick up the remaining inventory if they wanted it. (Tr. at 34). He stated that the existing inventory was junk left over from years of operating a florist business.

During the investigation, the Trustee found that some creditors had been paid and he felt that most of those amounts "were insignificant amounts, things like paying the phone bill." (Tr. at 35). The Trustee also found that most of them "were in the normal course," and that even if he recouped them, "they would be subject to the lien of the bank as monies under the terms of the UCC statements." (p. 35). He stated that he discussed them with Mr. Beck, counsel for Plaintiff, and "offered to let his firm collect them." (p. 35).

## MEMORANDUM OPINION AND ORDER
### (UNPUBLISHED)

*Appearances:*

Howard J. Beck, Jr., Esq.
GENTRY, LOCKE, RAKES & MOORE
P.O. Box 1018
Roanoke, Virginia 24005
Counsel for Plaintiff

Leon P. Ferrance, Esq.
KEY & TATEL
P.O. Box 1625
Roanoke, Virginia 24008
Counsel for Debtor/Defendant

H. CLYDE PEARSON, Bankruptcy Judge.

Cullinan Associates, Inc. ("Creditor" or "Plaintiff") initiated this Adversary Proceeding against George A. Clements ("Debtor") asking this Court to declare nondischargeable, pursuant to 11 U.S.C. § 523, a judgment against Debtor in favor of Creditor in the amount of $14,286.41, plus interest, or, in the alternative, to deny Debtor's discharge pursuant to 11 U.S.C. § 727(a)(7). At a hearing on June 1, 1994, Creditor informed this Court that they would only proceed on the § 727 issue and, therefore, that is the only issue before this Court. This is a core proceeding and this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(J) and § 1334. This Court finds no actual fraudulent intent and for the reasons hereafter stated, the Debtor is entitled to a discharge and this Adversary Proceeding is dismissed.

Debtor was president and stockholder of George's, Inc., a flower shop located in a building in the City of Roanoke owned by Debtor's father. In 1989, a fire occurred in the building and, as a result, Creditor contracted to do repair work on the premises. A dispute arose between the parties concerning the balance due on the contract. The Creditor claimed the amount owed for the work was approximately $17,000.00 while Debtor contended $8,500.00 was owed. In March 1992, the parties having been unable to resolve the issue, Creditor obtained a judgment in state court against Debtor in the amount of $10,465.75 principal due, plus interest of $3,553.18, for a total judgment of $14,019.11.[1] Later, in September, that same court awarded Creditor $12,233.05 plus interest for attorney's fees and expenses. On September 30, 1992, Debtor filed a Chapter 7 petition for relief under 11 U.S.C. § 701, *et seq.* On October 28, 1992, Debtor's business, George's Inc., also filed a Chapter 7 petition for relief.

Prior to that time, Debtor formed Calla Lily, Inc., and established another floral shop which bought inventory paying full consideration therefor for said inventory of George's, Inc. Creditor filed a proof of claim for $14,286.41 on November 2, 1992 and subsequently filed this Adversary Proceeding seeking a denial of Debtor's discharge alleging Debtor fraudulently transferred property pursuant to 11 U.S.C. § 727(a)(2); that Debtor, as an insider of George's, Inc., violated § 727(a)(7); and that Debtor made a false oath pursuant to § 727(a)(4).

As an initial matter, the Court notes that the Bankruptcy Code generally is to be liberally construed in favor of the debtor. *See Williams v. USF & G,* 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915); *Roberts v. W.P. Ford & Son, Inc.,* 169 F.2d 151, 152 (4th Cir.1948) (citing *Johnston v. Johnston,* 63 F.2d 24, 26 (4th Cir.1933) and *Lockhart v. Edel,* 23 F.2d 912, 913 (4th Cir.1928)). This universally recognized principle serves to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (citations omitted). This same "honest but unfortunate debtor" is thus provided with "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner,* 498 U.S. 279, 286, 287 111 S.Ct. 654, 659, 112 L.Ed.2d 755, 764, 765 (1991); *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710–11, 29 L.Ed.2d 233, 241 (1971); *Local Loan Co. v. Hunt,* 292 U.S., at 244, 54 S.Ct., at 699; *Johnston v. Johnston,* 63 F.2d, at 26; *Royal Indemnity Co. v. Cooper,* 26 F.2d 585, 587 (4th Cir.1928).

---

1. This portion of the state court judgment was paid apparently in full leaving the attorney fee's item remaining and which is the thrust of this Adversary Proceeding.

This Court, upon trial of this matter, heard the evidence including the testimony of the witnesses. It observed the candor, demeanor, truthfulness, and forthright testimony of witnesses as well as their credibility and makes the findings and conclusions herein.

Section 727(a)(2) provides that the court shall not grant the debtor a discharge if the debtor transferred property either within one year before the date of the filing of the petition or after the date of the filing of the petition with the intent to hinder, delay or defraud a creditor. 11 U.S.C. § 727(a)(2). This intent must be actual intent as distinguished from constructive intent. *In re Hess*, 21 B.R. 465 (Bankr.W.D.Va.1982); see also 4 *Collier on Bankruptcy* ¶ 727.02[3] (15th ed. 1994). The critical issue is the debtor's intent rather than the effect of his actions. In the present case, Debtor testified that Calla Lily paid full consideration for the inventory. Through Debtor's testimony it appears that Debtor never intended to fraudulently transfer the inventory and the payment of full consideration enforces this view. These transactions were apparently examined in full by the Chapter 7 trustee who found no ground to proceed on behalf of the estate to seek recovery or to seek denial of discharge nor has trustee joined in this Adversary Proceeding with this Creditor seeking such decision. The evidence before the Court was that the transfers were made with full consideration and in some instances more than fair consideration. These transfers were made with open disclosure and without any evidence that these transfers were for the purpose of fraudulent activity. Because Debtor lacked the requisite fraudulent intent under 11 U.S.C. § 727(a)(2), Debtor will not be denied a discharge pursuant to either § 727(a)(2) or § 727(a)(7).

Section 727(a)(4)(A) provides that a debtor will be denied a discharge if he knowingly or fraudulently makes a false oath in connection with the bankruptcy case. 11 U.S.C. § 727(a)(4)(A). Objections to discharge based on a false oath frequently arise with reference to misstatements or omissions made in schedules filed by the debtor or in testimony at examinations of the debtor. The false oath must have been knowingly and fraudulently made. The statement must contain matter which the debtor knew to be false and the debtor must have included it willfully with intent to defraud. *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249 (4th Cir.1987); See also 4 *Collier on Bankruptcy* ¶ 727.04[1]. (15th ed. 1994). In the present case, Debtor testified that his schedules were prepared well in advance of the filing date and some changes might have occurred in the "lapse" time. After filling out the petition, Debtor left it up to his attorney to file it promptly. Debtor testified that he was very confused at his § 341 meeting; that at times two or three people were asking questions; and that new questions were asked before he had an opportunity to answer prior questions. The conduct of section 341 meetings of creditors is within the province of the U.S. Department of Justice through the U.S. Trustee. If the foregoing is the customary manner in which these meetings are held, then remedial action would appear to be in order. This Court is removed from these meetings and only hears matters brought before the Court with appropriate procedure. Debtor's testimony shows he did not willfully make a false oath with the intent to defraud the creditors.

In addition to the foregoing, this Court notes that this Creditor/Plaintiff dismissed and waived the fraudulent allegations of non-dischargeability counts pursuant to § 523(a)(2) and (6). As such, this Court finds and must conclude that the allegations under § 523 were not sustainable. Therefore, if no fraud could be established or found under § 523, it is a matter of substance that no fraud can be found under § 727. For this reason, as well as those stated herein, this Court declines to deny Debtor's discharge and this Adversary Proceeding is dismissed and closed. SO ORDERED.

Service of a copy of this Memorandum Opinion and Order shall be made by mail to the Debtor; counsel for Debtor/Defendant; counsel for Plaintiff; Trustee; and U.S. Trustee.

ENTER this the 17th day of August, 1994.