**In re RAI MARKETING SERVICES, INC., Debtor.**

**Bankruptcy No. 81–21143.**

United States Bankruptcy Court, D. Kansas.

June 16, 1982.

C. Max Logan, of Logan & Martin, Olathe, Kan., for debtor.

Richard L. Reid, Kansas City, Kan., for petitioning creditors.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for hearing on February 2, 1982, upon debtor's Motion for an Order Dismissing Case, or Alternatively, Suspending all Proceedings. Debtor, RAI Marketing Services, Inc., appeared by its attorney, Max Logan of Logan & Martin. Petitioning creditors: William Stroder, d/b/a Stroder Graphic Arts; Paul Raymond, d/b/a Comp Art; and Instamatic Printers, Inc., d/b/a Lithographics, appeared by their attorney, Richard L. Reid.

## FINDINGS OF FACT

This controversy was commenced when the petitioning creditors filed an involuntary petition under Chapter 7 of Title 11, United States Code, on November 23, 1981, alleging that the debtor, RAI Marketing Services, Inc. (RAI), was not generally paying its debts as they became due; was not actively engaged in business; and had failed to maintain its status as a corporation authorized to do business in the state of Kansas. RAI filed an answer and a Motion to Dismiss or Suspend, alleging that the petition was not brought in good faith and that it was capable of paying its debts as they became due.

After reviewing the exhibits, transcript, briefs, pleadings and the file herein, this Court finds as follows:

1. That this Court has jurisdiction over the parties and the subject matter; and that venue is proper.

2. That RAI is a Kansas corporation doing business as an advertising agency. Frank Rickey is president and majority shareholder. Frank Weyforth is a shareholder and director, and formerly was purchasing agent for RAI.

3. That according to its October 31, 1981, balance sheet, RAI has total assets of $339,267.98 and total liabilities of $373,-467.12. The assets are composed of: about $6,000.00 in furniture and fixtures; $70,-675.27 in accounts receivables from Rickey & Associates that will be collectible only if Rickey & Associates is successful in collecting a claim it has in another bankruptcy estate; and $320,992.88 in accounts receivable, of which about $315,000.00 is due from Parts, Inc. and associated entities. In addition to these assets, a non-balance sheet asset exists in the form of a pending lawsuit against Frank Weyforth and the company he formed after leaving RAI's employ, Marketing Resources, Inc.

4. That in spite of its purported surplusage in assets, RAI ceased doing business and ceased paying its bills on May 1, 1981. Since that time the only business conducted by RAI has been the selling of its office furniture and fixtures on consignment and the attempted collection of its accounts receivable. Frank Rickey has foregone his salary and spent his own money pursuing two lawsuits: a $100,000.00 damage suit against Weyforth and Marketing Resources, Inc. for their alleged pirating of RAI's major account, Parts, Inc.; and against Parts, Inc. for a $315,000.00 receivable. Both suits were filed in August of 1981.

5. That no evidence was presented regarding the cancellation of RAI's charter in Kansas.

6. That petitioning creditor, William Stroder, has an unsecured claim for $6,756.05. Stroder formerly did business as Stroder Art, and did layout and graphic art for RAI from 1980 to March, 1981, primarily for RAI's Parts, Inc. account. Stroder testified that at the time his claim arose, he was still doing business as a sole proprietorship. In March of 1981, Stroder and Weyforth agreed to form a new corporation, Stroder Graphic Art, Inc., which was incorporated in June of 1981. Weyforth owns 51% and Stroder owns 35%. Marketing Resources, Inc. supplies Stroder Graphic Art, Inc. with about 60% of its business.

7. That petitioning creditor, Paul Raymond, has an unsecured claim for $526.24. Raymond is the sole proprietor of Comp Art, which did typesetting and graphic art for RAI's Parts, Inc. account. Marketing Resources, Inc. supplied Comp Art with about a third of its business.

8. That petitioning creditor, Instamatic Printers, Inc., d/b/a Lithographics, has an unsecured claim of $10,413.00. It has annual sales of about two million dollars, of which, about $10,000.00 can be attributed to Marketing Resources, Inc.

9. That Frank Rickey sent three letters to RAI creditors explaining RAI's financial status. The first letter, dated May 1, 1981, apprised creditors that although RAI had a surplusage of assets, it had ceased doing business because of the loss of its major account, Parts, Inc. The second letter, dated September 1, 1981, apprised them that legal action had been taken against Parts, Inc., Weyforth and Marketing Resources, Inc. The third letter, dated December 23, 1981, advised them of the bankruptcy and alleged that Weyforth wrongfully induced the petitioning creditors, to block RAI's suit against him. Form affidavits in opposition to the bankruptcy were enclosed in the third letter. Eighteen creditors signed and returned the affidavits.

10. That each petitioning creditor consulted with Weyforth before filing the petition, but denied that Weyforth influenced them in any manner. Rather, each creditor said they were motivated by RAI's cessation of business, its inability to pay bills, and no assurance that any money RAI received from lawsuits or accounts receivable would be paid over to them.

## CONCLUSIONS OF LAW

RAI moves the Court to dismiss or suspend the bankruptcy proceedings pursuant to 11 U.S.C. § 305, which states in pertinent part, as follows:

"§ 305. Abstention.

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension;"

█ Pursuant to the general rule that courts should exercise jurisdiction when properly invoked, and given that an abstention order is not appealable, this Court finds that § 305 should be strictly construed. While the legislative history does not define the scope of § 305, it is somewhat illustrative.

"A principle of the common law requires a court with jurisdiction over a particular matter to take jurisdiction. This section recognizes that there are cases in which it would be appropriate for the court to decline jurisdiction.... Thus, the court is permitted, if the interests of creditors and the debtor would be better served by dismissal of the case or suspension of all proceedings in the case, to so order. The court may dismiss or suspend under the first paragraph, for example, if an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment. The less expensive out-of-court workout may better serve the interests in the case...." H.Rep.No. 95–595, 95th Cong., 1st Sess. (1977) 325; S.Rep.No.95–989, 95th Cong., 2d Sess. (1978) 35, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6281.

Case law construing § 305 is sparse. In the few reported cases, however, the courts have uniformly required the existence of every factor mentioned in the legislative history, as a prerequisite to dismissal or suspension. For example, in Matter of Nina Merchandise Corp., 5 B.R. 743, 6 B.C.D. 910, 2 C.B.C.2d 1098, CCH ¶ 67689 (Bkrtcy.S.D.N.Y.1980), the court refused to dismiss the proceedings because there was no out-of-court arrangement to pay the creditors and no evidence that the petitioning creditors filed the petition for inequita-

ble or recalcitrant reasons. In *Matter of WPAS, Inc.*, 6 B.R. 44, 6 B.C.D. 1122, CCH ¶ 67613 (Bkrtcy.M.D.Fla.1980), the court refused to dismiss the proceedings because while dismissal may have been in the movant's best interest, it was not in the interest of the debtor and the other creditors.

On the other hand, dismissal was granted where there were definite out-of-court arrangements for paying the creditors, the petition was brought by a few defiant creditors and opposed by a substantial body of creditors, and dismissal was in the best interest of the debtor and *all* creditors. See *Matter of Luftek, Inc.*, 6 B.R. 539, 6 B.C.D. 1083, 2 C.B.C.2d 1351 (Bkrtcy.E.D.N.Y. 1980); *Matter of Bioline Laboratories, Inc.*, 9 B.R. 1013, 7 B.C.D. 948 (Bkrtcy.E.D.N.Y. 1981); *In re Sun World Broadcasters*, 5 B.R. 719, 2 C.B.C.2d 899 (Bkrtcy.M.D.Fla.1980).

■ This Court thinks it advisable to dismiss or suspend the proceedings only when each and every factor exists, since abstention is an extraordinary and nonappealable order. Thus, this Court will sustain a § 305 motion *only* when:

1. The petition was filed by a few recalcitrant creditors and most creditors oppose bankruptcy;
2. There is a state insolvency proceeding or other equitable and concrete out-of-court arrangement pending; and,
3. Dismissal or suspension is in the best interest of the debtor and all creditors.

■ Petitioning creditors are generally disgruntled, but when they are motivated by reasons other than the debtor's insolvency, the court should take a second look at the situation to see if in fact bankruptcy is the best route for all concerned. Here the petitioning creditors voiced the typical concerns: RAI's poor payment record; its present insolvency; and the lack of adequate assurance of future payment.

However, there was evidence that the petitioning creditors had other motives, as well. Weyforth, as shareholder, director and purchasing agent for RAI, worked closely with all three petitioning creditors.

At some point his relationship with RAI soured, and he left its employ and formed a new company, Marketing Resources, Inc., in which he had the controlling interest. RAI has filed suit against Weyforth and his company alleging that they pirated its major account, Parts, Inc., and that they thereby caused RAI's demise. Had Weyforth been a petitioning creditor, a finding of recalcitrant motives would have been easy.

Weyforth's recalcitrance can be imputed to the petitioning creditors, however, because of his influential position. His company, Marketing Resources, Inc., did substantial business with Raymond's company at the time of the petition, and with Lithographics to a lesser degree. Furthermore, after Weyforth left RAI, he and Stroder formed Stroder Graphic Arts, which took the majority of its business from Marketing Resources.

Moreover, Weyforth's influence on the petitioning creditors can be inferred from the fact that they each conferred with him before deciding to file the petition. In fact, Weyforth coordinated the joint filing of the petition. It appears then, that the petitioning creditors' motives included helping Weyforth stave off RAI's suit against him.

Given that the petitioning creditors had both genuine and refractory motives, the Court must determine whether bankruptcy would be in the best interest of all concerned. Relative to this determination is whether there are pending arrangements that will equitably satisfy the creditors and not be unduly burdensome or prejudicial to the debtor. If so, continuing these bankruptcy proceedings would be duplicitous and uneconomical.

In *Matter of Luftek, Inc.*, 6 B.R. 539, 548, 6 B.C.D. 1083, 2 C.B.C.2d 1351 (Bkrtcy.E.D. N.Y.1980), the court dismissed the case because such an out of court arrangement existed. There, the debtor had obtained a loan, secured by the personal assets of its president, which would provide it with sufficient funds to pay all its creditors in full and reorganize its affairs. In *Matter of Bioline Laboratories, Inc.*, 9 B.R. 1013, 7 B.C.D. 948 (Bkrtcy.E.D.N.Y.1981) the court

dismissed the case because the debtor had arranged a bulk sale of its assets, free and clear of liens, and the purchaser had guaranteed a minimum fifty percent payment to the debtor's unsecured creditors. In *In re Sun World Broadcasters*, 5 B.R. 719, 2 C.B.C.2d 899 (Bkrtcy.M.D.Fla.1980), the court dismissed the case because a state court liquidation proceeding was near conclusion.

This Court finds that in this case there is no pending arrangement that the creditors can rely on. The creditors have not received any payment since May 1, 1981; yet RAI wants them to await the outcome of the two lawsuits. The creditors would have to wait an unreasonable length of time; both suits were merely in the discovery stage at the time of the filing of this petition; and further, the likelihood of RAI getting judgment is uncertain.

The Court further finds that other than a statement by counsel, there is no assurance, if RAI obtained judgment and satisfaction that the creditors would be paid. No provision has been made for the filing or allowing of creditors' claims in the state court proceedings. Frank Rickey testified that he has foregone his salary and has assumed all litigation expenses. He could well decide that he is entitled to his share of any judgment first.

RAI contends that if the bankruptcy proceedings continue the creditors will get less because the trustee will undoubtedly abandon the lawsuits as burdensome, although the lawsuits compose the bulk of its assets. If the lawsuits are as meritorious as RAI contends, the trustee will probably pursue them. Furthermore, the trustee will undoubtedly be more diligent in pursuing the accounts receivable and in selling and accounting for the proceeds of the furniture and fixtures. At any rate, the trustee's duty to realize as much as possible for distribution to the creditors is far more reassuring to creditors than RAI's dubious promises of deferred payment. The fact that eighteen creditors filed affidavits in opposition to the bankruptcy is not dispositive. Those creditors represent less than $47,000.00 of $373,467.12 in liabilities. A substantial body of RAI's creditors have not indicated opposition to the bankruptcy. Therefore, the Court finds that dismissal would not be in the best interest of the creditors or the debtor, RAI.

The debtor is insolvent and has been unable to pay its bills since May 1, 1981, and it has not been an operating business since that time, nor have any accounts receivable been collected. It has sold some office furniture and fixtures but the proceeds have not been accounted for. Accordingly, the debtor's motion to dismiss or suspend the proceedings under 11 U.S.C. § 305 is hereby DENIED.

THE FOREGOING CONSTITUTES MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.