### In re M. EGAN CO., INC., Debtor.

### Bankruptcy No. 82–20905.

United States Bankruptcy Court,
W.D. New York.

Nov. 4, 1982.

Burns, Suter & Doyle by Paul Suter, Rochester, N.Y., for Ben. of Creditors.

Angel & Frankel by Sanford P. Rosen, New York City, for petitioning creditors.

Morris & Morris by Stephen P. Morris, Rochester, N.Y., for M. Egan Co., Inc., debtor.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

An involuntary petition in bankruptcy was filed in the above entitled matter on or about the 11th day of August, 1982. On August 12, 1982, an application was made to this Court by the debtor and the assignee in the State Court Assignment for benefit of creditors to abstain or dismiss the case under 11 U.S.C. § 305. The initial hearing on the motion was held on or about August 18, 1982 and at that point in time, the petitioning creditors in the bankruptcy matter asked for an adjournment to investigate the facts surrounding the assignment for the benefit of creditors, which preceded this particular action. In early September, a hearing was held on the motion and the Court at the end of the hearing reserved to give the parties thereto an opportunity to submit briefs and to obtain a transcript of the proceedings. The matter has now been submitted for decision.

The facts follow. M. Egan Co., Inc. is a corporation whose primary business is the wholesaling of meats and perishable products to supermarkets, restaurants and the like. It appears that in April or May of 1982 the banks began to tighten up the loans to the debtor in this proceeding. Because of the tightening of credit, the debtor decided to sell his business to a third party. Discussions were held with proposed purchasers during the month of June. Eventually, an agreement was reached with a company composed of two people by the name of Bevevino and McMullen. They were represented by a Mr. Caputo, an attorney from Pennsylvania. During the month of June, various conversations were held between these people and Mr. Hehir, the largest stockholder of M. Egan Co., Inc., and his attorney, Mr. Morris. Eventually, an agreement was made for the sale of M. Egan Co., Inc. to Bevevino and McMullen. This was memorialized by a contract of June 23, 1982.

The parties to this agreement had during their negotiations discussed the various ways in which the sale should take place. There was a discussion of a bulk sale. A liquidating Chapter 11 was considered, but it was finally agreed by the parties to conduct the sale through an assignment for the benefit of creditors. The determining factors for this decision was the feeling by the debtor that the bulk sale would result in a multitude of lawsuits, and the fact that the main salesmen of the company threatened to go with competitors if a bankruptcy was filed.

When they began to discuss the assignment for the benefit of creditors, Mr. Morris, the attorney for M. Egan Co., Inc., contacted Paul Suter of the law firm of Burns, Suter & Doyle and asked him to explain the procedures needed for an assignment, because while Morris was acquainted with the New York State law regarding an assignment for the benefit of creditors, he did not have the expertise that Suter had. Suter met with the various parties for about an hour to explain procedures. He did not participate in the agreement to make the sale or in the actual agreement to do it by an assignment for the benefit of creditors.

After these meetings, Morris contacted Suter and asked him to get somebody to act as assignee for the benefit of creditors. Suter in turn contacted Joseph Carges, vice-president of the Rochester Credit Men's Association, and with whom Mr. Suter's law firm has had a long time working agreement. Carges became the assignee for the benefit of creditors and Suter became the attorney for the assignee for the benefit of creditors. The assignment was made on or about June 29, 1982 or June 30, 1982 and the proper notice and operating orders were given by New York Supreme Court for Carges to proceed and operate the business as assignee for the benefit of creditors. He operated the business from that time to July 15, 1982 when it was sold to Bevevino and McMullen.

The sale to Bevevino and McMullen was completed on July 15, 1982. Since that time, Carges has been engaged in the collection of the accounts receivable which were not transferred to Bevevino and McMullen.

These accounts are of little value. He also has been proceeding to do all the things that are necessary to wind up the proceedings as assignee for the benefit of creditors. In the assignment proceeding, as of the date of the hearing, 202 claims have been filed out of a total of 360 creditors. The filed claims total about $924,000 out of a total possible claims of $1,400,000. These creditors favor the assignment.

The petitioning creditors in the bankruptcy matter numbered six. One has since withdrawn leaving five. Their claims total about 5% of possible claims or around $67,527. The petitioning creditors do not wish to overturn the sale by the assignee. They want all the benefits to be derived from the sale. Their main complaints are that Suter represented the assignee and they feel that preferences were made which could be more easily set aside in a bankruptcy.

11 U.S.C. § 305 provides in part as follows:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may, suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or ...

Several Courts because of the broad power of the Court to refuse jurisdiction have stated that dismissals under 11 U.S.C. § 305(a) are the exception rather than the rule. *In re Bioline Laboratories,* 9 B.R. 1013, 1023 (Bkrtcy.E.D.N.Y.1981), quoting *Matter of Luftek,* 6 B.R. 539, 548 (Bkrtcy.E.D.N.Y.1980). The Legislative History gives an example of when abstention would better serve the interests of creditors and the debtor. If an arrangement is being worked out by creditors and the debtor out of Court and there is no prejudice to the rights of creditors and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment, then, the less expensive workout may better serve the interests in the case. H.R. No. 95–595, 95 Cong., 1st Sess. 325 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787. The Courts have

placed great emphasis in invoking 11 U.S.C. § 305(a) on the economy of administration of a case, the need for additional administrative expenses, and the duplication of effort. See *In re Nina Merchandise,* 5 B.R. 743, 747 (Bkrtcy.S.D.N.Y.1980), citing *In re Lang,* 5 B.R. 371, 374 n. 4 (Bkrtcy.S.D.N.Y. 1980). The cases note that one factor leading to abstention is the existence of a nonfederal insolvency proceeding which has progressed so far as to make a bankruptcy duplicative and costly. Id. One Court has emphasized the guideline that abstention is most appropriate in an involuntary case. *In re Pine Lake Village Apartment Co.,* 16 B.R. 750, 753 (Bkrtcy.S.D.N.Y.1982). Another Court has set up three necessary factors: (1) the petition was filed by a few recalcutrant creditors and most creditors oppose bankruptcy; (2) a state insolvency proceeding or out of court arrangement is pending; (3) dismissal is in the best interest of the debtor and creditors. *In re Rai Marketing Services, Inc.,* 20 B.R. 943, 6 C.B.C.2d 995 (Bkrtcy.D.Kan.1982). The pending proceedings which have been sufficient to invoke different courts abstention have been assignments for the benefit of creditors; *In re Bailey's Beauticians Supply Company,* 671 F.2d 1063 (7th Cir.1982), an Act case; State Court Receivership, *In re Sun World Broadcasters,* 5 B.R. 719 (Bkrtcy.M.D.Fla. 1980); SEC equity receivership, *In re Starbuck,* 14 B.R. 134 (Bkrtcy.S.D.N.Y.1981); Bulk Sale agreement, *In re Bioline Laboratories,* 9 B.R. 1013 (Bkrtcy.E.D.N.Y.1981).

In the present case, there is an assignment which has resulted in a sale. The petitioning creditors want the benefits of the sale. There has been no showing of improprieties on the part of the assignee. In fact, he is continuing to reduce the estate to cash. The allegations of improprieties on the part of Suter are just that allegations and not substantiated by proof. In any event, improprieties, if any, can be taken care of in the State Court action. Most of the creditors have voiced their opinions in favor of the assignment. Only 5% of the creditors are opposing and they want the benefits of the assignee's sale.

The issue raised with regard to the preferences is illusory. It is that that there is a somewhat greater degree of proof in the State Court action but when that is balanced against the lack of showing of preferences in this action and the facts of the jurisdictional questions facing the bankruptcy courts as a result of the *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), there can be no doubt that such actions if they exist should be done in the State Court. To switch to this Court at this time will result in only a duplication of effort and an increase in costs.

As a result of the foregoing, the motion to refuse jurisdiction under 11 U.S.C. § 305 is granted and it is so ordered.