In re Robert A. SPADE, Debtor.

Profutures Special Equity Fund, L.P., Gary Schlessman, C/O Lee Schlessman Poa, Lee E. Schlessman, Cal Rickel and Amanda Rickel, Appellants,

v.

Robert A. Spade, Appellee.

Civ. A. No. 01–K–216.

United States District Court, D. Colorado.

Sept. 24, 2001.

James T. Markus, Block, Markus and Willimas, LLC, Denver, CO, Peter C. Houtsma, Holland & Hart, LLP, Denver, CO, for appellee.

Victor M. Morales, Clanahan, Tanner, Downing & Knowlton, P.C., Denver, CO, for appellants.

## MEMORANDUM DECISION
## ON APPEAL

KANE, Senior District Judge.

This is the second appeal of the bankruptcy court's decision to dismiss, under the abstention provisions of 11 U.S.C. § 305(a), the involuntary bankruptcy case commenced in February 2000 by Appellants ProFutures Special Equity Fund L/P., Gary Schlessman and Lee Schlessman (the "Creditors"), later joined by Cal and Amanda Rickel.

The Creditors originally appealed the bankruptcy court's decision to abstain under 11 U.S.C. § 305(a). The bankruptcy court's decision to dismiss the case failed to provide specific reasoning for its determination. My order on remand said that the case law required more.[1]

### BACKGROUND

The bankruptcy in question was the result of an 11 U.S.C. § 303 involuntary petition case filed by the ProFutures Creditors alleging they were owed various sums of money by Communications Systems International, Inc. (CSI) and that these sums were personally guaranteed by the debtor, Robert Spade. Their claims total approximately $2.8 million. The Rickels joined the petition several months later, claiming they are creditors holding an unsecured claim of $123,606.85 also guaranteed by Spade. Precipitating the first appeal, the bankruptcy judge found the petitioning creditors had met the standards of 11 U.S.C. § 303, but agreed with the debtor that the pending state court litigation was essentially a "collection case" that should be permitted to run its course. In reaching his decision, the bankruptcy judge found it in the "interests of the debtor and the petitioning creditors" to dismiss the case under § 305(a)(1).

On remand, the bankruptcy judge did not hear further evidence on the abstention issue, and relied upon the record from the June 15, 2000 trial. Based upon the existing record, the bankruptcy judge reconsidered the issue, reevaluated the facts, and entered on January 22, 2001, an Order on Remand Regarding Order to Abstain Pursuant to 11 U.S.C. § 305, again concluding abstention was appropriate. The bankruptcy judge adopted the more liberal interpretation of 11 U.S.C. § 305(a) promulgated by the court in *In re Tarletz*, 27 B.R. 787 (Bankr.D.Colo.1983), and held that in exercising the discretion afforded by § 305, a court may consider any factors it considers to be relevant to the determination of whether dismissal of the case or a suspension of all proceedings would better serve the interests of the creditors and the debtor.

The bankruptcy judge considered four factors in evaluating whether the interests of the Creditors and the Debtor would be better served by dismissing the case.

---

1. Because a court's failure to make findings necessary to the proper exercise of its discretion is itself an abuse of discretion, *see de la Llana–Castellon v. INS*, 16 F.3d 1093, 1098 (10th Cir.1994), I reversed and remanded the case to the bankruptcy court for additional, clarifying information, *In re Spade*, 255 B.R. 329, 333 (D.Colo.2000). I held that "specific findings, beyond a conclusory assertion that 'the interests of the debtor and petitioning creditors will be better served,' are required before a court may abdicate its duty to exercise jurisdiction over an otherwise proper case under § 305." *Id.* at 332.

Specifically, the bankruptcy judge considered: 1) the motivation of the parties seeking bankruptcy jurisdiction, 2) the availability of another forum, 3) the economy and efficiency of administration, and 4) the prejudice to the parties. Based on the review of these factors, he determined the interests of the Creditors and the Debtor would be better served by dismissing the case pursuant to 11 U.S.C. § 305(a).

This appeal ensued.

## LEGAL STANDARDS FOR REVIEW

Appellee's argue for application of "law of the case" doctrine to narrow the scope of review by this court.[2] Appellee's rationale is persuasive to the extent that *de novo* review of the factual findings of the bankruptcy court is not necessary. My previous order was explicit in requiring on remand "specific findings and conclusions explicating the court's exercise of discretion...." *In re Spade*, 255 B.R. 329, 333 (D.Colo.2000).

■ Once the factual findings made by the bankruptcy judge are determined to have satisfied the requirements for abstention under 11 U.S.C. § 305(a), the final inquiry is whether abstention by the bankruptcy court involved an abuse of discretion. *See Garamendi v. Allstate Ins. Co.*, 47 F.3d 350, 354 (9th Cir.1995). An abuse of discretion occurs only when the bankruptcy court bases its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling. *See Utah Licensed Beverage Ass'n*

*v. Leavitt*, 256 F.3d 1061, 1065 (10th Cir. 2001).

## CONCLUSION

■ My decision on remand was clear. The bankruptcy court could not abstain without making specific findings of fact to support its decision. To do so would equal an abuse of discretion. On remand the bankruptcy court made its findings in support of its decision to abstain and those findings support its decision. The Appellants offered no additional evidence to refute those findings or any persuasive arguments that the bankruptcy court did not apply the appropriate standard in determining that abstention was proper under 11 U.S.C. § 305(a). The bankruptcy judge's factual findings were based on rational assertions supported by testimony and evidence and clearly were not erroneous. The bankruptcy judge did not abuse his discretion and the decision of the bankruptcy court is affirmed.

## DISCUSSION

Section 305(a) of the Bankruptcy Code gives discretion to a bankruptcy court to abstain from hearing a case if it determines that the interests of the parties would be better served by dismissal. 11 U.S.C. § 305(a).[3]

In the initial appeal, I discussed two diverse approaches bankruptcy courts have adopted in determining whether ab-

---

2. "[T]he law of the case is a doctrine under which an appellate court will not reconsider a matter resolved on a prior appeal. The rule prevents questions already considered and decided once in the case from being reargued at every subsequent stage of the case." *Hale v. Gibson*, 227 F.3d 1298, 1329 n. 13 (10th Cir. 2000).

3. Section 305(a) of the Bankruptcy Code provides:
   (a) The court, after notice and a hearing may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if-
   (1) the interests of creditors and the debtor would be better served by such dismissal or suspension .... 11 U.S.C. § 305(a)(1).

stention is appropriate.[4] I concluded, however, that no matter which approach was embraced, case law requires specific findings, beyond a bald assertion that "the interests of the debtor and petitioning creditors will be better served," before a bankruptcy court can abstain under 11 U.S.C. § 305(a). *In re Spade,* 255 B.R. at 332.

While I recognize the multiple factor tests adopted by other courts may be useful in determining whether to abstain under 11 U.S.C. § 305(a), bankruptcy courts must look to the facts of each individual case. *See In re Iowa Trust,* 135 B.R. 615, 622 (Bankr.N.D.Iowa 1992); *In re Trina Assocs.,* 128 B.R. 858, 867 (Bankr. E.D.N.Y.1991); *In re Fitzgerald Group,* 38 B.R. 16, 17 (Bkrtcy.S.D.N.Y.1983). "The focus on the individual facts of each case recognizes that the interests of the debtor and the creditors, which must be weighed under § 305, are unique to each individual case." *In re Iowa Trust,* 135 B.R. at 621. Accordingly, a bankruptcy court is not bound by a prescriptive template; it may consider any factors it deems relevant to the determination of whether it is in the best interests of the parties to the suit to seek dismissal. Reasoned judgment based on articulated facts is the only test which the statute itself requires. *See In re Iowa Coal Mining Co.,* 242 B.R. 661, 671 (Bankr.S.D.Iowa 1999); *In re Manchester Heights Assocs.,* 140 B.R. 521, 523 (Bankr. W.D.Mo.1992).

Applying the factual findings adduced by the bankruptcy judge on remand, I must determine whether the findings were sufficient to conclude that the interests of the Creditors and the Debtor would be better served by dismissing the case.

The first factor the bankruptcy judge considered was the motivation of the parties seeking bankruptcy jurisdiction. The bankruptcy judge found that the involuntary petition was not filed as a means to ensure a fair distribution of the Debtor's assets to all Creditors, but instead, was a self-serving litigation tactic to control the forum and enlist a trustee to conduct and pay for discovery into the Debtor's affairs. The bankruptcy judge relied on the trial testimony of ProFutures representative, James Perry, in coming to these conclusions. Specifically, Mr. Perry testified that ProFutures decided to sue on the 1998 notes because suing on the 1997 notes would have required coordination with the other creditors, resulting in a small percentage of a $750,000 guarantee. With respect to the benefits of a trustee, Mr. Perry stated, "if you put us with a judge in state court, then we had the burden of going through the expensive discovery and trying to get information out of Mr. Spade that he doesn't willingly give us." The bankruptcy judge concluded "in view of the apparent self interest of ProFutures in filing this petition, the court must seriously consider whether the creditors as a whole will be better served by the exercising [of] jurisdiction over this case or by dismissal in favor of allowing the state court to continue with the cases pending before it."

The second factor the bankruptcy judge considered was the availability of another forum. The Creditors allege that bankruptcy court provides procedural and substantive benefits unavailable in state court, primarily the appointment of a trustee who can investigate the Debtor's financial affairs and seek recovery of assets. The bankruptcy judge found that the preference payments the Creditors sought to

---

**4.** *See In re Spade,* 255 B.R. at 332 (comparing the approaches taken by the courts in *In re RAI Marketing Services, Inc.,* 20 B.R. 943, 946 (Bankr.D.Kan.1982), and *In re Tarletz,* 27 B.R. at 793).

recover through the trustee were marginal in relation to the administrative costs associated with such an action. The fraudulent transfer issue has no special advantage because the bankruptcy court would apply the same state law as the pending state court action. ProFutures is the driving force behind the bankruptcy action and the case is really "little more than a two-party collection dispute between ProFutures and Mr. Spade." There is no need for the federal court to resolve a matter which is grounded in state law issues currently pending in state court. Lastly, keeping the case in the bankruptcy court could expose the Creditors to the possibility of conversion under Chapter 11 by the Debtor, resulting in serious delay to all creditors, including those who have not joined the suit, and the perceived benefits of a trustee would be lost to the detriment of all creditors.

The third factor considered by the bankruptcy judge was the economy and efficiency of administering the case in bankruptcy court. The bankruptcy judge found that allowing the case to remain would be inefficient and costly because the estate would be responsible for funding the trustee and any bankruptcy counsel hired by the trustee, and, if the Debtor did convert to Chapter 11, he would be required to employ counsel and incur fees to be paid out to the trustee.

The fourth factor considered by the bankruptcy judge was prejudice to the parties due to keeping the case in bankruptcy court. The bankruptcy judge found that other non-note holder creditors, specifically Key Bank, Robert Nash, and Holland & Hart, would be prejudiced because they are currently receiving payments from the Debtor. An order for relief would probably halt payments and force them into the bankruptcy case. The "non-joining note holders" have not shown a desire to take legal action against the Debtor; however, if the bankruptcy court exercised jurisdiction, they would have to participate in the proceedings and help subsidize the costs. "ProFutures' effort to bring its case into the bankruptcy court will shift the obligation of funding the discovery and litigation against Spade from ProFutures to *all* of Spade's creditors." Lastly, the Debtor would be prejudiced because he wishes to avoid bankruptcy proceedings, would lose the eligibility for relief under Chapter 7 for six years, and would be stigmatized by the involuntary proceedings.

These findings amply support the decision reached by the bankruptcy judge that the interests of the Creditors and the Debtor would be better served by dismissing the case pursuant to 11 U.S.C. § 305(a).

The appeal is denied.